IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | Chapter 11 |
| WESTERN ROBIDOUX, INC., | ) | |
| | ) | Case No.    19-05050-btf11 |
| Debtor. | ) | |

# CHAPTER 11 PLAN OF REORGANIZATION
# OF WESTERN ROBIDOUX, INC.

Western Robidoux, Inc. as debtor-in-possession, proposes this *Plan of Reorganization* pursuant to Section 1121 of the United States Bankruptcy Code.

## INTRODUCTION

The Debtor proposes to repay its creditors with the proceeds of the liquidation of its assets (the "Liquidation Proceeds" see definition *infra*), and with the proceeds of avoidance and other claims against two of its customers, Ceva Pharmeceuticals and Boehringer Ingelheim, and with the proceeds of $250,000 judgments it has obtained against Breht Burri and Infodeli, LLC along with certain other claims. The proceeds of the debtor's claims against Ceva Pharmeceuticals, Boehringer Ingelheim, Breht Burri and Infodeli, LLC are referred to herein as the Litigation Proceeds, more particularly defined, *infra*.

This Plan has one class of secured creditors, two classes of priority unsecured creditors and two classes of non-priority unsecured creditors. There is also one class of equity security holders.

The debtor has a single Allowed Secured Claim owing Nodaway Valley Bank in the approximate amount of $65,000 as of the date of this plan. This claim will be paid in full and with the first Litigation Proceeds and Liquidation Proceeds received by the debtor.

Holders of Allowed Priority Claims will be paid in full upon confirmation except for the Debtor's approximately $350,000 in Pre Confirmation Professional Fees and unpaid post-petition

1

rent due Burri Properties, LLC. These Pre Confirmation Professional Fees will be paid in full after the payment of Nodaway Valley Bank's Allowed Secured Claim and as the proceeds of the Liquidation Proceeds and Litigation Proceeds are realized.

Holders of Allowed Unsecured Claims have two possible treatments under this Plan. If the Court orders all the claims of Breht Burri, Infodeli, LLC, and TooBaRoo, LLC (the "Breht Group") be disallowed, subordinated to other Allowed Unsecured Claims, or recharacterized, then Burri Properties, LLC shall consent to the subordination of its unsecured claim to all Allowed Unsecured Claims except those held by the Breht Group: and all Allowed Unsecured Claims except for those held by the Breht Group and Burri Properties, LLC shall be paid pro-rata with the Litigation Proceeds and Liquidation Proceeds after the payment of the Allowed Secured Claims and Allowed Priority Claims. After those claims have been paid in full, the unsecured claims of Burri Properties, LLC shall be paid the Litigation Proceeds and Liquidation Proceeds until they are paid in full.

If the Claims of the Breht Group are not all disallowed, subordinated, or recharacterized, then the Debtor's Allowed Unsecured Claims shall be paid pro-rata the Liquidation Proceeds and Litigation Proceeds remaining after the payment of Allowed Secured Claims and Allowed Priority Claims.

If all or any part of the Allowed Claims of the Breht Goup are subordinated, such subordinated claims shall be paid, pro rata any funds remaining after the payment of Allowed Secured Claims, Allowed Priority Claims, and other Allowed Unsecured Claims.

If there are any Litigation Proceeds or Liquidation Proceeds remaining after the payment of Allowed Secured Claims, Allowed Priority Claims, Allowed Unsecured Claims, and any subordinated Allowed Claims of the Breht Group, the

The proposed distributions and treatment of different claim classes are discussed in Articles III and IV below.

All creditors and equity security holders should refer to this Plan and the Disclosure Statement for information regarding the precise treatment of their claims.

This Plan and the Disclosure Statement also provide detailed information regarding the terms for payment of the Debtor's creditors and other information designed to assist creditors and equity security holders in determining whether to accept the Plan. Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do

not have an attorney, you may wish to consult one.)

# ARTICLE I.
## Definitions

For the purposes of this Plan of Reorganization, the following terms and definitions shall have the following meanings:

1.1_    <u>Administrative Expense</u> shall mean those expenses described in Section 503(b) of the Bankruptcy Code.

1.2_    <u>Allowed Amount</u> of a claim or expense shall mean, for the purposes of the Plan, (a) the amount set forth by the holder of a claim in a timely filed and properly prepared proof of claim if that amount differs from the amount scheduled by the Debtor and no objection to the amount stated in the proof of claim is filed; or (b) the amount set forth in the Debtor's bankruptcy schedules as the undisputed amount of a Claim; or (c) the amount of such Claim established by a Final Order of the Bankruptcy Court if the amount set forth by the holder of such Claim in a timely filed, properly prepared proof of claim differs from the amount scheduled by the Debtor and an objection is filed to the proof of claim.

1.3_    <u>Allowed</u> shall mean, with respect to any Claim, the status of the Claim has not been disputed or (b) with respect to the disputed Claims, a Final Order allowing the Claim has been entered.

1.4_    <u>Allowed Priority Claim</u> shall mean an Allowed Claim for which the holder asserts and is determined to priority under Section 507(a) of the Bankruptcy Code

1.5_    <u>Allowed Secured Claim</u> shall mean an Allowed Claim, as defined above, arising on or before the petition date that is secured by a valid Lien, or property of the Debtors, which is not void or

3

voidable under any state or federal law: or an Allowed Claim for which the holder asserts a setoff under Section 553 of the Code, to the extent of the value (which is either agreed to by the Debtor pursuant to this Plan, or in the absence of an agreement, has been determined in accordance with Section 506(a) or 1111(b) of the Code) or the interest of the holder of such Allowed Claim in the Debtor's property, or an Allowed Claim that the Debtor has agreed to treat as an Allowed Secured Claim pursuant to this Plan. The portion of any Allowed Claim exceeding the value of security held, which is not secured by another Claim of higher priority, secured by the same property, shall be an Allowed Unsecured Claim except as modified by this Plan.

1.6_    <u>Allowed Unsecured Claim</u> shall mean an Allowed Claim against the Debtor which is not an Allowed Priority Claim or Allowed Secured Claim and which has not been subordinated to other Allowed Unsecured Claims.

1.7_    <u>Bankruptcy Court</u> shall mean the United States Bankruptcy Court for the Western District of Missouri.

1.8_    <u>Boehringer Ingelheim Causes of Action</u> shall mean any claim that the Debtor may assert against Boehringer Ingelheim Vetmedica, Inc. and related entities, all of which are preserved in this Plan, including but not limited to any claims to avoid transfers to Boehringer Ingelheim Vetmedica, Inc. or to entities related to Boehringer Ingelheim Vetmedica, Inc. including its counsel, Tucker Ellis, LLP and Armstrong Teasdale, LLP, relating to expenses incurred by Boehringer Ingelheim Vetmedica, Inc. or related entitles in the Federal Court Matter.

1.9_    <u>Case</u> shall mean Western Robidoux, Inc's. Chapter 11 proceeding, case number 19-05050-btf11.

1.10_    <u>Ceva Causes of Action</u> shall mean any claim that the Debtor may assert against Ceva Animal Health, LLC and related entities, all of which are preserved in this Plan, including but not limited to any claims to avoid transfers to Ceva Animal Health, LLC or to entities related to Ceva Animal Health, LLC, including its counsel Stinson, LLP, relating to expenses incurred by Ceva Animal

4

Health, LLC or related entities in the Federal Court Matter. The Ceva Causes of Action also include affirmative claims against Ceva Animal Health for indemnification of the Debtor's costs and expenses incurred in the Federal Court Matter and the State Court Matter.

1.11_   Claim shall have the meaning set forth at Section 101(5) of the Bankruptcy Code.

1.12_   Code shall mean the United States Bankruptcy Code, Title 11 of the United States Code, as effective on the date the petition which commenced this Case was filed.

1.13_   Confirmation Date shall mean the date upon which the order is entered by the Court confirming the Plan.

1.14_   Confirmation Hearing shall mean the hearing, held by the Bankruptcy Court to consider confirmation of the Plan, or an amended plan, and as contemplated by Section 1128(a) of the Code.

1.15_   Confirmation Order shall mean the Final Order entered by the Bankruptcy Court confirming the Plan pursuant to Section 1129 of the Code.

1.16_   Consummation of the Plan shall mean the accomplishment of all things provided for in this Plan.

1.17_   Creditor shall mean any person having a Claim.

1.18_   Debtor shall mean Western Robidoux, Inc.

1.19_   Effective Date shall mean the first day of the month immediately following the month of the Confirmation Date.

1.20_   Estate shall mean, the bankruptcy estate of the Debtors created in this Case, pursuant to

Section 541 of the Code.

1.21_    <u>Federal Court Matter</u> shall mean *Infodeli, LLC, et al., v. Western Robidoux, Inc. et al.* Western District of Missouri case number 4:15-cv-00364-BCW and its related appeal at the Eighth Circuit Court of Appeals, appeal numbers 20-2146 and 20-2256.

1.22_    <u>Final Order</u> shall mean an Order of the Court, which, not having been reversed, modified, or amended, or stayed, and for which the time for appeal has expired, and as to which no such appeal, review, or rehearing is pending, and has become conclusive of all matters adjudicated thereby and is in full force and effect.

1.23_    <u>Lien</u> shall mean any charge against or interest in property to secure payment of a debt or performance of an obligation and includes, without limitation, any judicial lien, security interest, mortgage, deed of trust, and statutory lien, as defined in Section 101 of the Code.

1.24_    <u>Liquidation Proceeds</u> shall mean the proceeds of the debtor's Liquidation of its assets, except for the Litigation Proceeds, after the costs of maintaining and selling the assets shall be paid.

1.25_    <u>Litigation Proceeds</u> shall mean any proceeds of the Ceva Causes of Action, Boehringer Ingelheim Causes of Action, or any proceeds of any judgments obtained by the Debtor against Breht Burri and Infodeli, LLC in the Federal Court Matter after the costs of obtaining proceeds from these claims have been paid.

1.26_    <u>Plan</u> shall mean this Plan of Reorganization, including any modifications, attachments, exhibits, amendments, or corrections.

1.27_    <u>Post-Confirmation Professional Fees</u> shall mean an Allowed Claim for compensation and reimbursement awarded under Section 330(a) of the Code for services provided or funds andvanced subsequent to the entry of a Confirmation Order.

1.28_    <u>Pre-Confirmation Professional Fees</u> shall mean an Allowed Claim for compensation and

6

reimbursement awarded under Section 330(a) of the Code for services provided or funds advanced prior to the entry of a Confirmation Order.

1.29_ Pro Rata shall mean a proportionate payment – an amount determined according to a particular entity's share of the whole.

1.30_ Priority Creditor shall mean the owner and holder of an Allowed Priority Claim

1.31_ Secured Creditor shall mean the owner and holder of an Allowed Secured Claim.

1.32_ State Court Matter shall mean *Infodeli, LLC, et al., v. Western Robidoux, Inc. et al.* Jackson County, Missouri Circuit Court case number 1616-CV09518 and the related appeals pending in the Western District of the Missouri Court of Appeals in appeals numbered WD83169 and WD 813182

1.33_ Unsecured Creditor shall mean the holder and owner of an Allowed Unsecured Claim.

# ARTICLE II.
## Classification of Claims and Interests

All Claims against the Debtor, of whatever nature, whether or not scheduled, unliquidated, absolute, or contingent, including all Claims arising from the rejection of executory contracts, and including all interests of any kind in any property of the estate or the Debtor, whether resulting from an Allowed Claim or not, shall be bound by the provisions of this Plan and are hereby classified as follows:

Unclassified Claims shall consist of (a) all Claims for the actual and necessary costs and expenses of administration of the Estate entitled to priority in accordance with Sections 507(a)(1) and 503(b) of the Code, including, without limitation fees payable pursuant to Section 1930 of Title 28 of the United States Code and any Claim arising under Section 507(a)(8) which is related to a tax assessed after 2004, but specifically not including any Post Confirmation Professional Fees or Pre

7

Confirmation Professional Fees.  Unclassified Claims shall also include rental payments due Burri Properties, LLC for rental payments which accrued post-petition until the termination of the debtor's lease with Burri Properties, LLC.

2.1   Class 1 shall consist of Pre Confirmation Professional Fees and Post Confirmation Professional Fees

2.2   Class 2 shall consist of all Allowed Claims held by Nodaway Valley Bank

2.3   Class 3 shall consist of all Allowed Unsecured Claims which are not members of any other class.

2.4   Class 4 shall consist of all Allowed Unsecured Claims held by Burri Properties, LLC

2.5   Class 5 shall consist of all Allowed Claims held by Infodeli, LLC; Breht Burri; and TooBaRoo, LLC.

2.5   Class 6  shall consist of the interests of the holders of equity in the Debtor.

2.6   Class 7 shall consist of the reclamation claim of Indigo America, Inc..

# ARTICLE III.
## Treatment of Claims and Interests Generally

Except as otherwise provided in this Plan, the following provisions shall apply to all Classes of Claims.

3.1   Secured Claims shall retain all Liens and Security Interests in the property of the Estate not otherwise discharged.  The Debtor presently does, and will insure all its property against loss

8

until it is liquidated.

3.2    Except where otherwise provided, if the Debtor fails to make any payment or perform any term or condition of the Plan or security documents not modified by this Plan, then a Creditor or interested Party, to whom such payment was to have been made, or for whose benefit the Debtor was to perform the violated term, may, after providing 30 days written notice to the Debtor and to the Debtor's counsel, if the Debtor has not cured, exercise all rights under this Plan and applicable law.

3.3    Except as otherwise provided, all terms contained in the documents evidencing creditors' Claims and Liens including but not limited to terms regarding interest rates, powers of sale, rights to take possession of property of the debtors without a court order, the amount and timing of payment, financial covenants, defaults and all other terms not specifically provided in the Plan will not control after confirmation of the Plan and the creditors will retain only the rights set forth in the Plan.

## ARTICLE IV
## Treatment of Claims and Interests By Class

The Debtor will pay all Claims, in the manner indicated below, after the Bankruptcy Court has entered its Final Order Confirming the Debtor's Plan.

Unclassified Claims are not impaired. Allowed Unclassified Claims shall be paid in full on the Effective Date unless the holder of an Unclassified Claim consents to later payment. Unclassified Claims shall be paid from the Debtor's estate. Any Unclassified Claims which arise after the entry of a Confirmation Order shall be paid in full prior to the payment of any other class of claims.

4.1    Class 1 Claims for Pre Confirmation Professional Fees are impaired. The Debtor believes

that the unpaid Pre Confirmation Professional Fees in this case will sum to approximately $375,000.  The Debtor will pay these claims all Liquidation Proceeds and Litigation Proceeds until they are paid in full after the Allowed Unclassified Claims, Allowed Post Confirmation Professional Fees and Class 2 Claims of Nodaway Valley Bank have been paid in full.  Additionally, the Debtor will incur Post Confirmation Professional Fees.  As these fees are allowed by this Court, they will be paid with available Liquidation Proceeds and Litigation Proceeds after the Allowed Unclassified Claims and Class 2 Claims of Nodaway Valley Bank have been paid in full.

4.2   The Class 2 Claims of Nodaway Valley Bank are impaired and will be paid in full.  These Claims are oversecured and will be secured by first priority liens in the Debtor's accounts receivable, accounts, other rights to payment, inventory, equipment, instruments and chattel paper, general intangibles, documents, government payments and programs, investment property, and deposit accounts until they are paid in full.  The Debtor estimates that upon confirmation, the balance of the Class 2 Claims will be approximately $55,000).  These claims shall be paid in full., which will include payment of interest, and the reasonable costs and fees of Nodaway Valley Bank with the Litigation Proceeds and Liquidation Proceeds after the payment of Unclassified Claims.

4.3   The Class 3 Claims of Allowed Unsecured Claims Which are Not Members of Any Other Class are impaired.   There are two possible treatments of this Class.  Payment will be made towards the claims in this class or towards any Allowed Unsecured Claims after five business days following the day the Bankruptcy Court enters a final unappealable order allowing or disallowing the debtor's Post-Confirmation Professional Fees and costs relating to the Bankruptcy Court's entry of final judgments or orders allowing, disallowing, subordinating or recharacterizing all the claims of the Breht Group.

<u>If all the Claims of the Breht Group are subordinated, recharacterized, or disallowed</u>, these Class 3 Claims will be paid with the Liquidation Proceeds and Litigation Proceeds after the payment of Unclassified Claims, Class 1 Claims and Class 2 Claims.

10

<u>If all the Allowed Claims of the Breht Group are neither subordinated, recharacterized, or disallowed,</u> then the Class 3 Claims will be paid with the Liquidation Proceeds and Litigation Proceeds in a common payment pool with the Class 4 Claims and Class 5 Claims of the Breht Group which are neither subordinated recharacterized or disallowed (the Class 3 Claims, Class 4 Claims, and Class 5 Claims are referred to respectively herein as the ("Allowed Unsecured Claims")). The claims in Class 3, Class 4, and Class 5, shall be paid pro rata from this payment pool until they are paid in full.

4.4  The Class 4 Claims of Burri Properties, LLC are impaired. Payment will be made towards the claims in this class or towards any Allowed Unsecured Claims until after five business days of the day the Bankruptcy Court enters a final unappealable order allowing or disallowing the debtor's Post-Confirmation Professional Fees and costs relating to the Bankruptcy Court's entry of final judgments or orders allowing, disallowing, subordinating or recharacterizing all the claims of the Breht Group. There are two possible treatments of this Class:

<u>If all the Class 5 Claims of the Breht Group are subordinated, recharacterized, or disallowed,</u> then these Class 4 Claims will be paid with the Liquidation Proceeds and Litigation Proceeds after the payment of Unclassified Claims, Class 1 Claims, Class 2 Claims, and Class 3 Claims.

<u>If all the Allowed Claims of the Breht Group are neither subordinated, recharacterized, or disallowed,</u> then the Class 4 Claims will be paid with the Liquidation Proceeds and Litigation Proceeds in a common payment pool with the Class 3 Claims and Class 5 Claims of the Breht Group which are neither subordinated recharacterized or disallowed.The claims in Class 3, Class 4, and Class 5, shall be paid pro rata from this payment pool until they are paid in full.

11

4.5    The Class 5 Claims of The Breht Group are impaired.  Payment will be made towards the claims in this class or towards any Allowed Unsecured Claims until after five business days of the day the Bankruptcy Court enters a final unappealable order allowing or disallowing the debtor's Post-Confirmation Professional Fees and costs relating to the Bankruptcy Court's entry of final judgments or orders allowing, disallowing, subordinating or recharacterizing all the claims of the Breht Group. There are two possible treatments of this Class:

<u>If all the Class 5 Claims of the Breht Group are subordinated, recharacterized, or disallowed,</u> If the Unclassified Claims, Class 1 Claims, Class 2 Claims, Class 3 Claims, and Class 4 Claims have been paid in full, then Allowed Claims in Class 5 which have been subordinated or recharacterized shall be paid the proceeds of the Litigation Proceeds and the Liquidation Proceeds.

<u>If all the Allowed Claims of the Breht Group are neither subordinated, recharacterized, or disallowed</u>, then the Class 5 Claims of the Breht Group which are neither subordinated recharacterized or disallowed will be paid with the Liquidation Proceeds and Litigation Proceeds in a common payment pool with the Class 3 Claims and Class 4 Claims. The claims in Class 3, Class 4, and Class 5, shall be paid pro rata from this payment pool until they are paid in full.

4.6    Class 6 Claims of interests of holders of equity in the Debtor are impaired.  The holders of equity in the debtor shall be paid pro rata after the payment in full of Unclassified Claims, Class 1 Claims, Class 2 Claims, Class 3 Claims, Class 4 Claims, and Class 5 Claims.

## ARTICLE V
### Interests to Be Retained and Rights to Be Exercised by the Debtor

5.1    <u>Cram Down</u> In the event that any class allowed to vote is deemed impaired under the Plan and refuses to accept the terms of the Plan, the debtor shall and hereby does move the

12

Bankruptcy Court to confirm the Plan pursuant to Section 1129 of the Code.  All Claims of creditors of the debtor shall be satisfied solely in accordance with the Plan.

5.2     <u>Post-Commencement Causes of Action</u> The debtor reserves the right to pursue all post-commencement causes of action, including, but not limited to, actions under Sections 544, 545, 547 and 548 of the Code, and similar applicable state-law causes of action, including, but not limited to the Boehringer Ingelheim Causes of Action, the Ceva Causes of Action, and to pursue the judgments obtained against Infodeli, LLC and Breht Burri in the Federal Court Matter and to assert claims for attorney's fees against Breht Burri and Infodeli, LLC in the Federal Matter.

5.3 <u>Pre-Commencement Causes of Action</u> The Debtors reserve the right to pursue all causes of action they held prior to the commencement of this case, including, but not limited to the Boehringer Ingelheim Causes of Action, the Ceva Causes of Action, and to pursue the judgments obtained against TooBaRoo, LLC and Breht Burri in the Federal Court Matter and to pursue the judgments obtained against Infodeli, LLC and Breht Burri in the Federal Court Matter and to assert claims for attorney's fees against Breht Burri and Infodeli, LLC in the Federal Matter.

5.4 <u>Executory Contracts and Unexpired Leases</u> Effective on the Effective Date, the Debtors shall reject all executory contracts and unexpired leases except for the following:

    a.  The debtor is currently party to a lease with Burri Properties, LLC of the debtor's headquarters and operating facility at 4006 South 40th Street in St. Joseph Missouri, which accrued rent at $16,000 a month through October, 2020 and at $15,600 a month from November 2020 until the end of the lease's term at July 2024.  The debtor will assume and modify this lease.  The debtor will assume this lease, but modify its terms so that it may be terminated by the debtor with 24 hours written notice to Burri Properties, LLC.  If the lease is terminated by the debtor, the term of the lease shall end at the later of: one week following such termination; or immediately upon the filing by the debtor of

a notice on the docket of this Court certifying that its property is removed from the leased premises at 4006 South 40th Street in St. Joseph Missouri and/or that it is abandoning any property left at the premises. Should the debtor have paid a full month's rent prior to terminating the lease, Burri Properties, LLC shall refund any rent paid for the portion of the month following the end of the lease term. Burri Properties, LLC shall have 30 days after the end of the lease term to file a claim for rejection damages pursuant to 11 USC section 502.

# ARTICLE VI
## Means for Implementing the Plan

6.1   Liquidation  The debtor will fund the Plan with the Liquidation Proceeds and Litigation Proceeds. The debtor plans to largely cease operations near the end of 2020 and to sell substantially all of its property in the first quarter of 2021. The debtor expects to retain several employees to assist with the organization and sale of its property and further expects to completely cease operations after substantially all the debtor's property is sold. The debtor's board of directors, consisting of Connie Burri, Peter Burri, and Brian Burri will remain intact to govern the debtor and ensure it conforms to this Plan. Additionally, the debotr's president, Connie Burri, and Vice-president Burri (or as appointed by the board of directors, or replacements to the board of directors, who may be named as set forth in the debtor's bylaws) will remain in place until the Liquidation Proceeds and Litigation Proceeds have been realized and disbursed according to the provisions of this Plan. The debtor's board of directors has never been and never will be compensated for their duties as directors. The members of the board of directors, have been and continue to be compensated for their employment by the debtor in other roles as employees. That arrangement will continue until the debtor ceases operations following the sale of substantially all of its property, after which the debtor's officers and employees shall be paid an hourly wage of $25.00, which shall be an Unclassified Claim, for time spent working for the debtor. Though members of the board of directors may be compensated for work done

as employees, they will not be compensated for time spent performing functions as directors.

6.2　<u>Claims</u>　Already filed Claims may be amended without leave of the Court for 30 days after the Effective Date and Claims listed as undisputed on the Debtor's schedules may file Claims asserting a Claim different than that set forth on the Debtor's schedules for 30 days after the Effective Date. Except as otherwise set forth in this Plan, no amendments to Claims or to Claims listed on the Debtor's schedules may be filed after the 30th day following the Effective Date. The debtor may file objections to Claims for 90 days after the Effective Date or for 30 days after a new Claim is filed or if Claim is amended if such claim is filed or amended more than 60 days after the Effective Date. Any objection to a Claim shall be determined by the Bankruptcy Court. At present, the debtor knows of no Claims other than those mentioned in this Plan, listed in the debtor's schedules or filed with this Court.

6.3　<u>Distributions Under the Plan</u>　Creditors' Allowed Claims will be paid as specifically provided in this Plan.. The debtor has a duty to make distributions as required under this Plan. In the event a distribution mailed to a Creditor is returned insufficient address or any other reason, the debtor shall make a good faith effort to locate the Creditor or its representative. Until an appropriate recipient of the distribution is found, the undistributed funds shall be retained by the debtor for one year following the debtor's first attempt to mail a distribution to that creditor. On that date, if the debtor has not been able to locate the Creditor or Creditors, then undisbursed funds shall be redistributed in accordance with the priority scheme in this Plan. However, a redistribution will only occur if such redistribution would result in the payment of $10.00 or more to a particular Creditor. Any funds remaining after any redistribution shall be paid into the Court.

6.4　<u>Reserve Fund</u> – Within five business days of the day the Bankruptcy Court entering a final unappealable order allowing or disallowing the debtor's Post-Confirmation Professional Fees and costs relating to the Bankruptcy Court's entry of final judgments or orders allowing, disallowing, subordinating or recharacterizing all the claims of the Breht Group and before the payment of Allowed Unsecured Claims, the debtor shall set aside the sum of $20,000 to

15

pay Unclassified Claims, including quarterly United States Trustee Fees, newly arising Post Confirmation Professional Fees, including costs for preparing quarterly reports and tax returns for the debtor and its estate and for the costs of closing the debtor's bankruptcy case.  When the debtor determines that the provisions of this Plan have been fully carried out and that the case is ready to be closed, the debtor shall estimate the costs necessary to close the case, hold those funds in reserve and pay the rest of the Reserve Fund in accordance with the priority scheme in this Plan.

## ARTICLE VII

### Effect of Confirmation and Post Confirmation Matters

7.1    The confirmation of this Plan when confirmed will bind the debtor, , any entity acquiring property under the plan, and any creditor, equity security holder, or general partner, or partner in or with the debtor, whether or not the claim or interest of such creditor, equity security holder, or partner is impaired under the plan and whether or not such creditor, equity security holder, or partner has accepted the plan. Confirmation of this Plan will not discharge the Debtor from any debt that arose before the date of such confirmation.

7.2    The confirmation of a plan shall vest all of the property of the estate in the debtor.

## ARTICLE VIII

### Jurisdiction of the Court

After the Confirmation Date, the Bankruptcy Court shall retain exclusive jurisdiction of the Case pursuant to the provisions of Chapter 11 of the Code and Section 1334 of Title 28 of the United States Code and will have exclusive jurisdiction over the following matters:

1.    To adjudicate all controversies concerning the classification or allowance of any Claim, including any administrative Claim or Claim arising from any environmental liability;

2.	To hear and determine all Claims arising from the rejection of any executory contract or unexpired lease and to consummate the rejection and termination of executory leases;

3.	To liquidate damages in connection with any disputed, contingent, or unliquidated Claims;

4.	To adjudicate all Claims to, or ownership of, any property of the Debtors or in any proceeds thereof arising prior to and after the Effective Date;

5.	To adjudicate all Claims, cases, or controversies arising out of any purchases, sales, or contracts made or undertaken by the Debtors prior to the Effective Date;

6.	To make such orders as are necessary and appropriate to construe or effectuate the provisions of this Plan;

7.	To hear and determine any and all post-commencement Causes of Action.  The Debtor reserves the right to pursue all post-commencement causes of action, including, but not limited to, actions under Sections 547 and 548 of the Code, and similar applicable state-law causes of action;

8.	To hear and determine any and all applications of professional persons for allowance of compensation and/or reimbursement of expenses and all other claims for Administrative Expenses which may be pending on, or made after, the Confirmation Date;

9.	To adjudicate any and all motions, adversary proceedings, and litigated matters pending on the Confirmation Date or filed afterwards within any applicable statutory period;

10.	To adjudicate any and all cases, controversies, and disputes arising under, or in connection with, this Plan or any order or document entered or approved by the Bankruptcy Court in connection with the Debtor, this Case, or any controversy or dispute which may affect the Debtor=s ability to implement or fund this Plan;

17

11. To hear and determine such other matters as the Bankruptcy Court, in its discretion, shall deem appropriate.

## ARTICLE IX
## General Provisions

9.1 Construction. The article and section headings used in this Plan are inserted for convenience and reference only and neither constitute a part of this Plan, nor do they effect the terms, provisions, or interpretation of this Plan.

9.2 Severability. Should any term or provision in this Plan be determined to be unenforceable, such determination shall in no way limit or effect the enforceability and operative effect of any other term or provision of this Plan.

9.3 Controlling Documents. In the event and to the extent that any provision of this Plan is inconsistent with the provisions of the Disclosure Statement or any other agreement, document or instrument required or contemplated to be executed pursuant to this Plan, the provisions of this Plan shall control and take precedence.

9.4 Governing Law. Except to the extent that the Code or the Federal Rules of Bankruptcy Procedure are applicable, the rights and obligations arising under this Plan and any documents, instruments, or agreements executed in connection with this plan (except as otherwise indicated in such documents, instruments, and agreements) shall be governed by, and construed and enforced in accordance with, the laws of the State of Missouri.

9.5 Further Assurances and Cooperation.

The debtor, and each person required or contemplated by this Plan to execute and deliver a written instrument, agreement, shall execute and deliver such instrument, agreement, or document in form and substance satisfactory to the debtor, and shall perform all other and further reasonable acts requested by the debtor in order to permit the purposes and intents of this Plan to be consummated.

## ARTICLE X
## Modification of the Plan

The debtor may propose amendments or modifications of this Plan at any time prior to the entry of the Confirmation Order, with approval of the Bankruptcy Court and upon notice to creditors or to such parties as may be directed by the Bankruptcy Court. After entry of the Confirmation Order, the Debtor may, with approval of the Bankruptcy Court, and so long as it does not materially or adversely affect the interests of creditors, remedy any defect or omission, or reconcile any inconsistencies in this Plan, or in the Confirmation Order, in such manner as may be necessary to carry out and implement the purposes and intents of this Plan.

Dated November 2, 2020 and Respectfully submitted by

**MERRICK, BAKER, AND STRAUSS**

/s/ Victor F Weber
Bruce E. Strauss   #26323
Victor F. Weber    #57361
MERRICK BAKER & STRAUSS, P.C.
500 Peck's Plaza
1044 Main Street
Kansas City, Missouri 64105
Telephone:     (816) 2218855
Facsimile:      (816) 2217886
ATTORNEYS FOR DEBTOR

20