# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| In re: ) | |
| ) | Case No. 19-50505-BTF |
| WESTERN ROBIDOUX, INC., ) | |
| ) | Chapter 7 |
| Debtor. ) | |

## ORDER APPROVING GERMAN MAY, PC'S FINAL FEE APPLICATION

German May, PC (GM) seeks the court's final approval under Rule 2016(a) of the Federal Rules of Bankruptcy Procedure of its application for compensation of fees and expenses it incurred as special counsel for debtor Western Robidoux, Inc. (WRI) from October 28, 2019, through June 30, 2020.

Creditors InfoDeli, LLC; TooBaRoo, LLC; and Breht C. Burri[1] (collectively, the objectors), object to the final fee application on two grounds. First, the objectors contend that GM cannot establish the reasonableness of its fees as 11 U.S.C. § 330(a)(3) requires, and, therefore, GM is not entitled to the fees and expenses it incurred as special counsel. Second, the objectors contend that GM represented an interest adverse to the estate and ask this court to exercise its discretion under 11 U.S.C. § 328(c) to disallow all of GM's fees and expenses.

For the reasons explained below, the court determines (1) GM has established the reasonableness of its fees under the factors set forth in § 330(a)(3), and (2) GM did not hold or represent an interest adverse to the estate in its role as special counsel. Consequently, the court APPROVES GM's final fee application.

---

[1] Breht is the sole member of both TooBaRoo, LLC and InfoDeli, LLC.

## JURISDICTION

The court has jurisdiction over GM's fee application under 28 U.S.C. §§ 1334 and 157(a). This matter is statutorily core under 28 U.S.C. § 157(b)(2)(A) and is constitutionally core. No party has contested the court's jurisdiction or authority to adjudicate GM's final fee application. The court, therefore, has the authority to hear this matter and make a final determination.

## BURDEN OF PROOF

The professional seeking compensation bears the burden of proving it is entitled to all fees and expenses. *Chamberlin v. Kula (In re Kula)*, 213 B.R. 729, 736 (B.A.P. 8th Cir. 1997). The professional seeking compensation should not take its burden lightly because every dollar expended on legal fees is a dollar less available to creditors. *In re Dille*, No. 18-42994, 2021 WL 864201, at *2 (Bankr. W.D. Mo. Mar. 8, 2021).

## BACKGROUND

This case comes with a long and tortuous history. The court derives the following background information from the fee application and attached exhibits, the statements counsel for each party made at oral argument, and the record in this case.

WRI operated a commercial printing and marketing business from the late 1800s until it ceased operation in 2021. Final Fee Appl. ¶ 3, ECF No. 276. Connie Burri is WRI's president and majority shareholder, holding a 71.2% interest. Statement of Financial Affairs 59–61, ECF No. 55. Her three sons, Peter Burri, Brian Burri, and Breht Burri, each hold a 9.6% interest in WRI. *Id.*

In early 2014 a dispute arose between the objectors, on one side, and WRI, Cindy Burri, Brian Burri, Peter Burri, and Connie Burri (collectively, the individual Burris), on the other. In anticipation of litigation stemming from that dispute, WRI and the individual Burris retained GM as their counsel.

In May 2015 InfoDeli and Breht sued WRI and the individual Burris in federal district court, alleging thirteen counts including federal copyright infringement and breach of a joint venture agreement. *InfoDeli, LLC v. W. Robidoux, Inc.*, No. 15-00364, 2015 WL 13850106 (W.D. Mo. May 12, 2015). WRI and the individual Burris counterclaimed against InfoDeli and Breht. The district court dismissed three of InfoDeli and Breht's thirteen counts, including breach of the joint venture agreement, for lack of subject matter jurisdiction. In response, TooBaRoo sued WRI in Missouri state court for, among other things, breach of the joint venture agreement. *TooBaRoo, LLC v. W. Robidoux, Inc.*, 614 S.W.3d 29 (Mo. App. W.D. 2020).

While the state and federal litigation was pending, WRI commenced this bankruptcy case. ECF No. 1. WRI asked the bankruptcy court to employ Daniel Blegen and GM as special counsel under § 327(e) in the state and federal litigation. The objectors opposed WRI's motion to employ GM as special counsel on several grounds, including that GM also held or represented an interest adverse to the estate by representing the individual Burris in the state and federal litigation.

At the hearing on December 20, 2019, the court determined that WRI established the elements outlined in § 327(e), including that GM did not hold or represent an interest adverse to the estate. The court also determined that requiring

WRI to hire substitute counsel to defend it on such short notice would be extremely prejudicial and detrimental to WRI because of the cost associated with hiring replacement counsel and increased risk of adverse judgments. Order Granting Mot. To Employ Daniel Blegen of German May, PC, ECF No. 102.

At the December 2019 hearing, the court warned Blegen to be careful not to bill the estate any legal fees for matters that solely benefited the individual Burris. The court also cautioned GM to monitor possible future conflicts that might arise between WRI and the individual Burris because such conflicts could prevent GM from continuing to simultaneously represent all parties.

At the December 2019 hearing, the parties disagreed about whether the district court had previously dismissed all counts against the individual Burris. In 2016, the district court dismissed InfoDeli and Breht's tortious interference count against a co-defendant, explaining that the Copyright Act preempted the tortious interference count. The next day, mistakenly believing the order dismissing the tortious interference count against the co-defendant also dismissed that count against the individual Burris, the district court denied as moot a motion to dismiss the tortious interference count against the individual Burris. The district court ultimately dismissed all other counts against the individual Burris. To correct the discrepancy between the actual and intended effects of the 2016 order dismissing the tortious interference count against the co-defendant, the district court ultimately dismissed the tortious interference count against the individual Burris on the first day of the March 2020 federal trial.

WRI obtained a complete defense verdict in the federal litigation, jury awards of $250,000 each against InfoDeli and Breht on WRI's counterclaims, and an award of $698,302 for attorneys' fees. The objectors' appeal is currently pending before the Eighth Circuit. In the state litigation, the jury awarded TooBaRoo a total of $1,290,206 in damages and pre-judgment interest against WRI.

In May 2021 GM filed its final fee application with this court. The objectors object to the final fee application on two primary grounds. First, they allege the fees incurred did not benefit the estate, were unreasonable, and were not for actual, necessary services. Second, they contend a direct, non-waivable conflict of interest existed between WRI and the individual Burris.

The court held a hearing on August 10, 2021, on GM's final fee application. The court admitted GM's amended exhibits 1–5 and the objectors' exhibits A–C, F–P, W–CC, and GG–II. The court took judicial notice of ECF No.'s 102, 113, 114, 119, 122, 123, and 125.

In the fee application, GM originally requested $326,840 in fees and $21,102.59 in expenses for a total of $347,942.59. Because GM already applied a $45,011.73 retainer, the net amount GM originally sought in its final fee application was $302,930.86. At the August 10 hearing, GM voluntarily withdrew ten time entries and one expense from its application, reducing its request by a total of $2,142.50 in fees and $142.86 in expenses. The final amounts GM asks the court to approve are $324,697.50 in fees and $20,959.73 in expenses for a total of $345,657.23. After applying the retainer, the net amount is $300,645.50.

5

Blegen credibly testified at the hearing in support of GM's final fee application. He testified that he has been an attorney for twenty-three years and has been managing litigation for twenty years. He further testified that he defended WRI in the state and federal litigation and prosecuted its counterclaims in the federal litigation. He described the experience of the professionals who worked on these matters, the division of work among them, and the professionals' billing entries and rates. Specifically, he explained that from October 2019 through December 2020 GM drafted briefs in the state court appeal, submitted thoroughly litigated motions in limine, prepared for and tried a two-week federal jury trial, and drafted post-trial briefing.

Blegen also testified that GM's services benefited WRI by successfully defending against a federal lawsuit seeking $6 million in damages, providing WRI with competent counsel in the state and federal litigation, and successfully prosecuting counterclaims against the objectors in the federal litigation that resulted in an award of $500,000 in damages and $698,302 in attorneys' fees.

The objectors focused their cross examination of Blegen on the alleged "non-waivable conflict" between WRI and the individual Burris. They argue that WRI should have wanted the objectors to obtain a judgment against the individual Burris in the federal litigation because TooBaRoo would credit any amount InfoDeli and Breht collected against the individual Burris under that judgment against WRI's $1.2 million obligation under TooBaRoo's state court judgment.

## ANALYSIS

Sections 330 and 328(c) govern the court's determination of the present dispute. Section 330 entitles special counsel to reasonable compensation for actual and necessary services and reimbursement for actual, necessary expenses. 11 U.S.C. § 330(a)(1)–(3). But § 328 empowers the court to disallow otherwise actual, necessary, and reasonable fees if the special counsel represents or holds an interest adverse to the estate. 11 U.S.C. § 328(c).

### A. GM's services and expenses are actual and necessary, and GM's fees are reasonable

The court may approve a special counsel's fee application under § 330 if (1) counsel's services and expenses are actual and necessary, and (2) counsel's fees are reasonable. 11 U.S.C. § 330(a)(1)(A).

The court has discretion when it awards fees and expenses under § 330(a), and it may independently determine whether the fees are actual and necessary. *In re Meyer*, 185 B.R. 571, 574 (Bankr. W.D. Mo. 1995) (citing *Cont'l Ill. Nat'l Bank & Trust Co. of Chi. v. Charles N. Wooten, Ltd. (In re Evangeline Refining Co.)*, 890 F.2d 1312, 1326–27 (5th Cir. 1989)). But a fee application that specifies the nature of the services rendered, the time expended, and the expenses incurred is a prerequisite to the court making that determination. *Id.*; Fed. R. Bankr. P. 2016(a).

Here, GM actually incurred fees and expenses in the state and federal litigations. GM submitted detailed invoices describing the services it rendered, and expenses it incurred, identifying each professional who rendered the services and the

7

time each professional spent on the services. These invoices satisfy the prerequisite and show GM performed actual services and incurred expenses for the estate.

Further, GM heeded the court's admonition and maintained separate detailed billing records to avoid billing the estate for work that only benefited the individual Burris. To the extent GM initially sought compensation for work it performed for the individual Burris, the court determines GM cured any such defects by filing amended exhibits separately invoicing work it performed for WRI and the individual Burris. Thus, all fees and expenses GM presently seeks in its application are "actual" under § 330.

The services GM rendered and expenses GM incurred in the state and federal litigation were also necessary to defend WRI against the objectors' multi-million-dollar copyright infringement claims and to prosecute WRI's counterclaims. WRI obtained a complete defense verdict in the federal litigation and judgments totaling $500,000 on its counterclaims for tortious interference against Breht and InfoDeli. WRI also obtained a $698,302 award of attorneys' fees and costs under the Copyright Act. Had WRI not retained competent counsel, the objectors might have prevailed in the federal litigation. GM's services, therefore, were necessary to preserve the value of WRI's bankruptcy estate.

Further, it was necessary for GM to represent WRI to minimize attorneys' fees. GM has represented WRI in the federal and state litigations since 2014. Blegen intimately understood the complex facts and legal issues of the federal litigation. This court approved WRI's application to employ GM on the eve of trial. Had the

8

court required WRI to retain replacement counsel, the estate would have incurred additional and unnecessary costs to bring that counsel up to speed. It was, therefore, necessary for GM and Blegen to continue to act as counsel for WRI.

Once a professional has shown its services and expenses are actual and necessary, it must then show the fees it incurred are reasonable. 11 U.S.C. § 330(a)(1)(A). In determining whether fees are reasonable, the court considers:

>  (A) the time spent on such services;
> 
>  (B) the rates charged for such services;
> 
>  (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
> 
>  (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance, and nature of the problem, issue, or task addressed;
> 
>  (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
> 
>  (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.

11 U.S.C. § 330(a)(3)(A)–(F).

GM has shown its fees are reasonable under factors (A), (B), (C), (D), and (F). Factor (E) does not apply to the court's analysis.

GM has shown its fees are reasonable under factors (A), (B), and (F). From October 28, 2019, through June 30, 2020, GM billed the estate 1119.1 hours. This is a reasonable amount of time for counsel to have spent preparing for and litigating a

federal jury trial and state court appeal. The average billing rate GM charged was $270.61 per hour. Blegen—a partner at GM who has twenty years' experience managing litigation, and the responsible attorney for this litigation—charged $400 per hour for his services. Blegen testified that GM offered its services to the estate at a "significant discount" below its usual rates. Based upon the court's familiarity with the hourly rates in Kansas City, the court finds these rates reasonable and in line with Kansas City rates. Thus, as to factors (A), (B), and (F), GM's fees are reasonable.

GM satisfies factor (C) as to the federal litigation because GM provided competent services to WRI and effectively and economically protected WRI's interests, thus benefiting the estate. By the time the court approved GM's employment in late 2019, the parties had completed their pretrial briefing and were ready to conduct a federal jury trial. GM had already dedicated thousands of hours and billed over $2.6 million in legal fees defending WRI and the individual Burris since late 2014. Its attorneys were well acquainted with the litigation. If the court required WRI to employ counsel unfamiliar with the years-long litigation, the estate would have incurred substantial and unnecessary expenses to replace GM and would have potentially risked an adverse judgment. Consequently, GM's services in the federal litigation were necessary to the administration of and beneficial toward the completion of the case.

The objectors argue that GM's services in the federal litigation were not beneficial because the estate will be unable to collect on the counterclaim judgments

and fee award. This argument ignores entirely that GM's services benefited the estate by liquidating and reducing to zero WRI's potential liability in the federal litigation. The objectors' argument also ignores that uncertainty concerning future collectability is inherent in all litigation. The objectors' unproven statements that WRI will never collect on the judgments do not negate the value of the services GM performed in obtaining the fee award and judgment for the estate. The judgments and fee award may be valuable assets of the estate, for example, by providing possible setoff value against TooBaRoo's $1.2 million judgment. Thus, WRI's bankruptcy estate benefited from GM's services in the federal litigation.

GM's services representing WRI in the state court appeal also benefitted WRI's bankruptcy estate at the time GM rendered the services because, if successful, the appeal would have relieved the estate of a $1.3 million obligation. Like in the federal litigation, GM's competency and familiarity with the state litigation benefitted the estate by saving the estate time and money. Thus, as to factor (C), GM's fees are reasonable.

GM satisfies factor (D) because the time it spent is commensurate with the complexity, importance, and nature of a two-week federal jury trial, pre- and post-trial motions, and state court appeal. InfoDeli and Breht initially brought thirteen counts and named sixteen defendants in the federal litigation. The case involved complex legal issues and factual disputes. GM's services were important to the estate because the litigation put WRI at risk of significant liability. GM performed the services within a reasonable amount of time commensurate with the complexity,

11

importance, and nature of the tasks GM addressed. Thus, as to factor (D), GM's fees are reasonable.

Because GM has established its services and expenses are actual and necessary and its fees are reasonable, the court determines GM has satisfied its burden under § 330. Having made that determination, the court next analyzes whether it should nonetheless disallow GM's fee application under § 328(c).

**B.    GM does not hold or represent an interest adverse to the estate**

Even if a professional establishes its fees are actual, necessary, and reasonable, § 328(c) empowers the court to disallow professional fees if the professional holds or represents an interest adverse to the estate that arises during the professional's employment. 11 U.S.C. § 328(c). Thus, § 328 penalizes a professional's failure to avoid ongoing, disqualifying adverse interests. *Rome v. Braunstein*, 19 F.3d 54, 58 (1st Cir. 1994). The court may exercise discretion to approve or deny compensation under § 328(c). *Pruss v. Pelofsky (In re Sauer)*, 222 B.R. 604, 609 (B.A.P. 8th Cir. 1998) ("[a]lthough § 328(c) confers considerable discretion on the court, it does not *compel* the disallowance or disgorgement of fees").

A party holds an interest adverse to the estate if it possesses or asserts an economic interest that would lessen the value of the bankruptcy estate or create an actual or potential dispute between the party and the estate. *Blumenthal v. Myers (In re M&M Marketing, LLC)*, 426 B.R. 796, 802 (B.A.P. 8th Cir. 2010). An attorney represents an adverse interest if its client holds any such interest. *Id.* at 803.

To establish that GM represented an interest adverse to the estate, the objectors must show one of two things: either the individual Burris' economic interests lessened the value of the bankruptcy estate; or the individual Burris' economic interests created an actual or potential dispute between them and the estate.

The objectors appear to argue that the individual Burris' economic interest in defending against the federal litigation (1) created an actual dispute between the individual Burris and the estate because any judgment InfoDeli and Breht received against the individual Burris would have reduced the objectors' ability to collect against WRI in satisfaction of TooBaRoo's state court judgment; (2) created a potential dispute between WRI and the individual Burris because WRI could have filed a cross claim in the federal litigation seeking contribution from the individual Burris for WRI's liability under TooBaRoo's state court judgment; and (3) lessened the value of the estate because the federal court dismissed the individual Burris, which prevented any benefit to the estate under the preceding two arguments. For these reasons, the objectors argue the court should disallow the fee application because GM represented an interest adverse to the estate.

Importantly, the court already determined GM did not hold or represent an interest adverse to the estate when it approved WRI's application to employ GM as special counsel. The court finds the objectors have not shown any change in circumstance that would create an adverse interest.

The individual Burris do not possess or assert an economic interest that would lessen the value of the estate. The objectors have not convincingly explained how a potential judgment in favor of InfoDeli and Breht against the individual Burris for tortious interference would reduce TooBaRoo's judgment against WRI for breach of the joint venture. There appears to be a lack of mutuality to prevent setoff. Thus, the individual Burris' interest in dismissal of the federal litigation did not conflict with the estate's interest in reducing WRI's liability under the state court judgment.

Even if setoff were legally viable, it might produce a net benefit to the estate as circumstances stand. Counsel for the objectors stipulated at the December 2019 hearing that Breht, InfoDeli, and TooBaRoo are the same entity. GM raised this very possibility in its suggestions in support of the fee application. With the individual Burris dismissed as parties, WRI obtained judgments totaling $500,000 and an award of $698,302 in attorneys' fees against InfoDeli and Breht in the federal litigation. If the objectors are all the same entity, mutuality may exist for setoff. Because setoff of WRI's judgments and award against TooBaRoo's judgment would significantly reduce the estate's liability to TooBaRoo, the possibility of setoff does not create a conflict between the individual Burris and WRI, but instead may create a net benefit to the bankruptcy estate.

The individual Burris also do not possess or assert an economic interest that creates an actual dispute between them and the estate. WRI and the individual Burris shared a common interest in defending against the objectors in the federal litigation because all defendants faced close to $6 million in liability based on common

14

factual allegations. Obtaining dismissal of the individual Burris as parties prevented the federal jury from receiving evidence of the joint venture and tortious interference. This was a litigation tactic that proved successful. Had the district court not precluded the tortious interference count, evidence relating to that count may have prejudiced all defendants, WRI included. In the federal litigation, WRI and the individual Burris shared common interests in seeking the dismissal of the individual Burris as defendants under the tortious interference count. Accordingly, the individual Burris' interest in the dismissal did not create an actual dispute between the Burris and the estate.

Though the objectors can envision circumstances in which the individual Burris' interests in dismissal could have harmed WRI, those theoretical circumstances never came to fruition. Section 328 does not require this court to speculate as to what might have happened and disallow counsel's fees because the court can imagine an outcome in which the interests of the individual Burris and WRI might not align. The court need only look to the outcome of the federal litigation to determine that the district court's dismissal of the tortious interference count did not harm WRI. That outcome persuades the court to exercise its discretion to allow GM's fees despite any potential adverse interest.

The court, therefore, determines GM did not hold or represent an interest adverse to the estate during its representation of WRI in the state and federal litigation and exercises its discretion to allow GM's fees.

## CONCLUSION

For the reasons explained above, the court APPROVES GM's final fee application. The court awards GM a total of $345,657.23, which includes $324,697.50 in fees and $20,959.73 in expenses. After applying the retainer, the net amount remaining unpaid is $300,645.50.

It is so ordered.

Dated: 10/21/2021                /s/ Brian T. Fenimore
                                 United States Bankruptcy Judge